IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Wiley Y. Daniel**

Civil Action No.   11-cv-02676-WYD-CBS

RESON LEE WOODS and
SHAUN K. WOODS,

    Plaintiffs,

v.

THE FIRST NATIONAL BANK OF DURANGO, a chartered National Bank, *et al.*,

    Defendants.

**ORDER DENYING MOTION FOR SUMMARY JUDGMENT**

Reson and Shaun Woods and The First National Bank of Durango are no strangers to the inside of a courtroom.  This lawsuit is the fourth proceeding involving these parties arising out of the money the Woods both borrowed and attempted to borrow for the construction of a farmhouse in Ignacio, Colorado.  In this suit, which is almost identical to a previously filed state court action,[1] the Woods assert one federal claim and ten state law claims against the Bank and others.  Defendants originally moved to dismiss almost all of the claims pursuant to the Colorado Credit Agreements Act (hereinafter referred to as "the Act"), which prohibits lawsuits on "credit agreements" unless they are reduced to writing and signed by the party against whom enforcement is sought.  The Act not only bars claims for breach of any such agreement, but bars all tort

---

[1]Case No. 2010CV79, Colorado District Court, La Plata County. *See* Not., ¶3 [DE-11].

and related claims as well.

The Defendants, however, submitted materials beyond the four corners of Plaintiffs' Second Amended Complaint, including an affidavit of defense counsel purporting to establish the absence of written documents supporting Plaintiffs' claims. [DE 40-1]. Due to the submission of these materials, and because Defendants suggested that the Act might present a threshold case dispositive issue, I converted the motion to dismiss to one for summary judgment. [DE-49]. Magistrate Judge Craig B. Shaffer also stayed discovery pending a ruling on the motion. [DE-42].

This case, however, illustrates the perils courts encounter when converting motions to dismiss to motions for summary judgment. Under normal circumstances, a party moving for summary judgment submits a "Statement of Material Facts." *See* Pract. Std., Wiley, J., Sec. III.B.3. I require the movant's "Statement" to set forth in simple, declarative sentences, which are separately numbered and paragraphed, each material fact that the movant believes supports movant's claim that movant is entitled to judgment as a matter of law. *Id.* Each fact must be accompanied by a citation to evidence in the record. *Id.* The party opposing summary judgment then responds to each individual fact, admitting or denying the asserted material facts set forth by the movant. *Id.* at III.B.4.

The whole point of requiring the recitation of undisputed facts is to clearly identify truly undisputed facts so that I can properly decide a motion for summary judgment. When my procedures for summary judgment are ignored, as they were here when the motion to dismiss was converted to a motion for summary judgment, it is difficult to

ascertain what facts are actually undisputed.

This case also demonstrates why filing a motion for summary judgment is ill advised at the outset of a case. Both parties rely on the testimony of Kathy Burgess from the prior bankruptcy proceeding. The parties, however, have wildly divergent understandings of the nature of her testimony. Defendants have even introduced an affidavit signed by Burgess in the hopes of clarifying her prior testimony. *See* [DE 50-1]. Far from clarifying her testimony, the affidavit only demonstrates that the parties need to engage in discovery before the Court entertains a motion for summary judgment. A deposition of Burgess will obviate the need for the Court to pick between competing interpretations of her testimony.

The issue with Burgess's testimony, however, is not the only problem with Defendants' motion for summary judgment. In contrast to the Court's initial impression of the motion to dismiss, a review of the arguments and evidence submitted by the parties reveals that the Act is not case dispositive and the Plaintiffs are entitled to discovery before I rule on a motion for summary judgment. Defendants initially argued that the Act served as an affirmative defense to almost all of Plaintiffs' ten state law claims. Defendants maintained that all of the claims stemmed from two "credit agreements" - (1) the April 2008 agreement for construction-to-permanent financing that involved two loans (an 18-month construction loan and a second, permanent loan that would pay off the construction loan after eighteen months); and (2) October 2009 agreement to substitute a 7-year balloon loan for the permanent loan agreed to in April 2008. The Defendants argued that the Act bars all claims based on these two credit

agreements because the agreements were not reduced to writing and signed by the Bank.

In response, the Plaintiffs maintain that the two credit agreements identified by Defendants actually consist of three agreements: (1) a March 2008 executory agreement for construction-to-permanent financing ("Agreement #1");[2] (2) the formal construction loan agreement entered in April 15, 2008 ("Agreement #2"); and (3) the September/October 2009 agreement to substitute a 7-year balloon loan for the permanent loan ("Agreement #3").  Plaintiffs maintain that writings signed by the Bank exist for all three credit agreements.

Defendants' sur-reply marks a departure from arguments raised in prior briefs. [DE-55].  In that filing, Defendants concede that the initial legal basis for the motion, that the Act statutorily bars all of Plaintiffs' claims, remains a viable argument only as to Agreement #3.  As to Agreements #1 and #2, Defendants now assert that summary judgment is appropriate because they did not breach those agreements.  A sur-reply brief, however, is not a proper way to inject a new legal argument in favor of summary judgment.  *Carter v. Univ. of S. Alabama Children's & Women's Hosp.*, 510 F.Supp.2d 596, 608 (S.D.Ala. 2007)(declining to consider new grounds for summary judgment raised for the first time in a reply brief.).  Because Defendants raised these arguments for the first time in a sur-reply, the Court declines to consider them as a basis for granting summary judgment.

What remains for me to consider is whether the Act bars all claims related to

---

[2]The Court will use the nomenclature adopted by the parties for the different credit agreements.

Agreement #3 because no writing, signed by the Bank, exists.  Plaintiffs maintain that two "writings" exist that take Agreement #3 outside the purview of the Act.  The first "writing" consists of a cover letter from the Bank signed by Vice-President Kathy Burgess sent to Plaintiffs along with "written disclosure" forms, which included a good faith estimate of closing costs and a credit score information disclosure.  *See* Ex. 10 [DE 47-10].  The second "writing" consists of a  Credit Agreement Memorandum (hereinafter "CAM") created by the Bank during the approval process.

As to the first so-called "writing," I find that these documents do not constitute a "writing" under the Act.  As it relates to Defendants' argument here, the Act provides that:

> .... no debtor or creditor may file or maintain an action or a claim relating to a credit agreement involving a principal amount in excess of twenty-five thousand dollars unless the credit agreement is in writing and is signed by the party against whom enforcement is sought.

Colo. Stat. § 38-10-124(2).  Under the Act, a credit agreement is defined in relevant part as:

> A contract, promise, undertaking, offer or commitment to lend, borrow, repay, or forbear repayment of money, to otherwise extend or receive credit, or to make any other financial accommodation.

*Id.* at § 38-10-124(1)(a). Plaintiffs maintain that with respect to Agreement #3, the "credit agreement" consists of the Bank's oral promise to lend $485,000 on a seven year loan, which the Plaintiffs orally accepted in September 2009.  The parties are both in accord that this oral agreement satisfies the definition of a "credit agreement" under § 38-10-124(1)(a) of the Act. I agree with the Defendants, however, that the cover letter

and disclosure documents do not satisfy the writing requirement of § 38-10-124(2).

The plain language of the statute requires that the "credit agreement" be in writing. Colo. Stat. § 38-10-124(2). Here, the credit agreement consists, in part, of the Banks promise to lend the Plaintiffs a seven-year loan in the amount of $485,000. Nowhere in the cover letter or disclosure documents is this promise reduced to writing. That some of the disclosure documents indicate certain terms that Plaintiff maintains are part of their agreement is of no moment. The Act requires the "credit agreement," here the Bank's promise to lend money, to be in writing and signed by the Bank. *See* Colo. Stat. § 38-10-124(2). The cover letter and disclosure documents simply do not reduce that promise to writing.

The other writing identified by Plaintiffs, the CAM generated by the Bank regarding Agreement #3, is missing. Plaintiffs have asked for the Court to decline the motion for summary judgment pursuant to Rule 56(d)[3] so that they may attempt to obtain a copy of the CAM through discovery. *See* Ex. 20 [DE 51-4]. While I have some concerns whether the CAM, if found, constitutes a "writing" under § 38-10-124(2), I cannot reach that decision until I have reviewed the content of the CAM. Accordingly, the Court will deny the motion for summary judgment and allow the parties to commence discovery.

---

[3]Rule 56(d) provides as follows:

> If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
> (1) defer considering the motion or deny it;
> (2) allow time to obtain affidavits or declarations or to take discovery; or
> (3) issue any other appropriate order.

That is not to say, however, that discovery should commence immediately. My review of the parties' papers together with the history of this case and the other legal proceedings between them raises a serious question as to why the parties are litigating this dispute in federal court. It is clear to me that Plaintiffs' state law claims substantially predominate over the lone federal claim in this case. 28 U.S.C. § 1367(c)(2)(district courts may decline to exercise supplemental jurisdiction where the state law claims "substantially predominate" over the federal claims). Plaintiffs federal claim, and the only reason this Court has jurisdiction over these non-diverse parties, is asserted in Count I and provides that Defendants violated the Equal Credit Opportunity Act, 15 U.S.C. §1691 ("ECOA"). The ECOA was originally enacted in 1974 to prohibit discrimination in credit transactions. *Treadway v. Gateway Chevrolet Oldsmobile Inc.*, 362 F.3d 971 (7th Cir. 2004). It was amended in 1976 to require creditors to furnish written notice of the specific reasons why an adverse action was taken against a consumer. 15 U.S.C. §§ 1691(d)(2) and (3)). Plaintiffs allege in Count I that Defendants violated the ECOA by failing to provide written notification to the Plaintiffs on three of their credit applications within thirty days.

The ECOA allows Plaintiffs to recover their "actual damages" for the Defendants' failure to comply with the 30 day requirement. For example, Plaintiffs indicate that Defendants did not provide written notification on one of their applications for forty-six days. Pl.'s Resp., p. 8 [DE-14]. Whatever damages Plaintiffs incurred by a sixteen day delay in receiving notification, they are in no way similar to the damages Plaintiffs seek for their fraud, deceptive trade practices, tortious interference, outrageous conduct and

breach of contract claims. Allowing this predominantly state law case to proceed in this federal forum "can accurately be described as allowing a federal tail to wag what is in substance a state dog." *Jacobs v. Castillo*, 612 F.Supp.2d 369, 375 (S.D.N.Y. 2009)(internal citations omitted).[4] Accordingly, it is

ORDERED THAT

(1) Defendants' Motion to Dismiss [DE-32] that the Court converted to a motion for Summary Judgment is DENIED.

(2) Plaintiffs shall show cause in writing on or before **October 12, 2012**, why the Court should exercise supplemental jurisdiction over Plaintiffs' state law claims (Counts Two through Eleven).

(3) The parties shall not commence discovery until further Order of the Court.

Dated: September 25, 2012.

BY THE COURT:

s/ Wiley Y. Daniel
WILEY Y. DANIEL,
CHIEF UNITED STATES DISTRICT JUDGE

---

[4] That a nearly identical state court case remains pending and Plaintiffs' ECOA claims could have been raised in that case are relevant to the Court's decision.