IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**SENIOR JUDGE WILEY Y. DANIEL**

Civil Action No.   11-cv-02676-WYD-CBS

RESON LEE WOODS and
SHAUN K. WOODS,

  Plaintiffs,

v.

THE FIRST NATIONAL BANK OF DURANGO, a chartered National Bank,

  Defendant.

---

**ORDER**

---

I.   <u>INTRODUCTION</u>

THIS MATTER is before the Court on Defendant, First National Bank of Durango's ("FNBD"), Motion for Summary Judgment (ECF No. 103), filed on September 23, 2013.  This motion seeks summary judgment on an Equal Credit Opportunity Act claim ("ECOA"), 15 U.S.C. § 1691, and 10 contractual and non-contractual claims.  FNBD asserts that its notice of denial of credit to Plaintiffs, Reson L. Woods and Shaun K. Woods, was not untimely and that it did not violate its lending commitments.  Plaintiffs filed a Response (ECF No. 123) on November 18, 2013.  A reply (ECF No. 127) in support of FNBD's motion was filed on December 2, 2013.  For the reasons stated below, FNBD's Motion for Summary Judgment is denied.

II.   <u>ANALYSIS</u>

  A.   <u>Standard of Review</u>

Summary judgment may be granted where "the pleadings, depositions, answers

to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the . . . moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' if, under the governing law, it could have an effect on the outcome of the lawsuit." *E.E.O.C. v. Horizon/ CMS Healthcare Corp.*, 220 F.3d 1184, 1190 (10th Cir. 2000). "A dispute over a material fact is 'genuine' if a rational jury could find in favor of the nonmoving party on the evidence presented." *Id.*

The burden of showing that no genuine issue of material fact exists is borne by the moving party. *Horizon/CMS Healthcare Corp.*, 220 F.3d at 1190. "'Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000) (quotation omitted). When applying the summary judgment standard, the court must "'view the evidence and draw all reasonable inferences therefrom in the light most favorable to the party opposing summary judgment.'" *Id.* (quotation omitted). All doubts must be resolved in favor of the existence of triable issues of fact. *Boren v. Southwestern Bell Tel. Co.*, 933 F.2d 891, 892 (10th Cir. 1991).

B.     <u>Whether Summary Judgment is Proper as to Plaintiffs' ECOA Claim</u>

Plaintiffs' Second Amended Complaint (ECF No. 30) brings an ECOA claim, in which they assert that FNBD failed to provide timely notice of its denial of credit in the dealings it made with Plaintiffs. Under the ECOA, "[w]ithin thirty days . . . after receipt of a *completed application* for credit, a creditor shall notify the applicant of its action on the

application."[1]  15 U.S.C. § 1691(d)(1) (emphasis added).  "Each applicant against whom adverse action is taken shall be entitled to a statement of reasons for such action from the creditor."  15 U.S.C. § 1691(d)(2).  Adverse action means "[a] refusal to grant credit in substantially the amount or on substantially the terms requested in an application unless the creditor makes a *counteroffer* (to grant credit in a different amount or on other terms) and the applicant uses or expressly accepts the credit offered."  12 C.F.R. § 202.2(c)(1)(i) (emphasis added).  Adverse action "does not include a refusal to extend additional credit under an existing credit arrangement where the applicant is *delinquent* or otherwise in *default*, or where such additional credit would exceed a previously established credit limit."  15 U.S.C. § 1691(d)(6) (emphasis added).

In the case at hand, FNBD argues that summary judgment is appropriate due to the lack of either adverse action or application completeness.  Specifically, FNBD contends that the April 2008 Construction Loan constituted a counteroffer; Plaintiffs' default on the Construction Loan and prior undisclosed delinquency precludes an ECOA claim; and the adverse action notice associated with the September 2009 Uniform Residential Loan Application was not untimely because the application was incomplete.  As explained below, I find that Plaintiffs have demonstrated the existence of genuine issues of material fact as to each of these contentions.

---

[1] 12 C.F.R. § 202.2(f) defines *completed application* as:

an application in connection with which a creditor has received all the information that the creditor regularly obtains and considers in evaluating applications for the amount and type of credit requested (including, but not limited to, credit reports, any additional information requested from the applicant, and any approvals or reports by governmental agencies or other persons that are necessary to guarantee, insure, or provide security for the credit or collateral).  The creditor shall exercise reasonable diligence in obtaining such information.

### 1. Counteroffer

A counteroffer may preclude an adverse action claim under the ECOA. 12 C.F.R. § 202.2(c)(1)(i). On April 15, 2008, FNBD issued Plaintiffs a Construction Loan Agreement in response to Plaintiffs' loan application submitted in February of 2008. In regards to the application, Plaintiffs allege that they submitted a single application to FNBD for a Construction Loan and a Permanent Loan. ECF No. 123, at p. 21. FNBD, however, asserts that Plaintiffs submitted a single application for just a Construction Loan. ECF No. 103, at p. 17. Plaintiffs subsequently signed the Construction Loan Agreement, but dispute FNBD's characterization of the Agreement as a counteroffer. ECF No. 123, at p. 24. In pertinent part, the Agreement states, "Borrower has applied to Lender for one or more loans for purposes of constructing the Improvements on the Real Property described below. Lender is willing to lend the loan amount to Borrower solely under the terms and conditions specified in this Agreement and In the Related Documents, to each of which Borrower agrees."[2] ECF No. 104-10, at p. 10.

FNBD contends that the Construction Loan Agreement constitutes a counteroffer, precluding adverse action under the ECOA. ECF No. 103, at p. 26. Plaintiffs contend that there are genuine issues of material fact to be resolved, including whether the Construction Loan Agreement constitutes a counteroffer[3] and whether the counteroffer was timely made within 30 days from when the application became complete. ECF No. 123, at p. 24.

---

[2] The Construction Loan defines Related Documents as "all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Loan." ECF No. 104-10, at p. 16.

[3] Plaintiffs assert that "FNBD was not making a counteroffer, it was simply documenting one of the loans." ECF No. 123, at p. 24.

### 2.      Default and Delinquency

Adverse action "does not include a refusal to extend additional credit under an existing credit arrangement where the applicant is delinquent or otherwise in default . . . ." 15 U.S.C. § 1691(d)(6).  FNBD asserts that rescinding approval on the Permanent Loan was proper under the ECOA because Plaintiffs defaulted on the Construction Loan by failing to make timely payments.  ECF No. 103, at pp. 26-27.  Plaintiffs concede that on several occasions they failed to make timely payments on the Construction Loan.  ECF No. 123, at p. 25.  However, Plaintiffs contend that defaulting on a loan with an interest reserve feature[4] is not grounds under the ECOA for rescinding approval on another loan.  ECF No. 123, at p. 26.

Further, FNBD asserts that Plaintiffs made false declarations in their loan applications by failing to disclose a liability and indicating that they had not been involved in a prior foreclosure proceeding.  ECF No. 103, at pp. 26-28.  Regarding the liability, Plaintiffs assert that they disclosed the Louisiana Drive/Mesa Meadows liability to FNBD in a balance sheet before the loans at issue were approved.  ECF No. 123, at ¶¶ 76-79.  Regarding the foreclosure, Plaintiffs contend that the question at issue was answered incorrectly because it was misunderstood and that FNBD has not argued that the answer would have caused the Permanent Loan to be denied.  ECF No. 123, at p. 27.  Plaintiffs, further, assert that FNBD was unaware of this issue when FNBD violated the ECOA and that such after acquired knowledge cannot preclude liability under the ECOA.  *Id.*

---

[4] Plaintiffs assert that "[t]he interest reserve was established so that borrowers could make interest payments, at their option, using the reserve built in to the loan.  The interest reserve feature protects the bank and it makes it easier for the borrower to service the construction loan . . . ."  ECF No. 123, at p. 25.

### 3. Completeness of Application

A creditor must notify an applicant of its action on an application within 30 days of receiving the completed application. 15 U.S.C. § 1691(d)(1). Regarding the timeliness of the adverse action notice associated with the September 2009 Uniform Residential Loan Application,[5] Ms. Burgess sent a disclosure letter to Plaintiffs requesting additional materials on September 23, 2009. ECF No. 103, at ¶ 87. At the bottom of the letter she wrote, "Shaun – I need fully executed copies of the loan modification from J.P. Morgan and the settlement from B of A – Copies I have are not signed yet. Thanks, Kathy." *Id.*

On October 29, 2009, Ms. Burgess sent an adverse action notice to Plaintiffs regarding the September 2009 Uniform Residential Loan Application. ECF No. 103, at ¶ 86. As of October 29, 2009, FNBD contends that it had not received the signed documents that Ms. Burgess requested on September 23, 2009.[6] ECF No. 103, at ¶ 88. Thus, FNBD contends that the application was incomplete, precluding an ECOA claim. Plaintiffs assert that any argument premised on a second loan application[7] must fail for two reasons. First, Plaintiffs contend that they applied for two loans using one application, which was complete in March of 2008. ECF No. 123, p. 25. Plaintiffs assert that both loans covered by this application were approved and that the approvals were communicated to them in a lawful manner. *Id.* Second, in regards to the Permanent loan, Plaintiffs point out that "FNBD does not dispute that it effectively made

---

[5] This document was signed by Plaintiffs on September 16, 2009 and by Kathy Burgess, FNBD's lending officer, on September 22, 2009. ECF No. 104-12, at p. 4.

[6] Plaintiffs assert that they signed and returned these documents to FNBD on or about October 10, 2009. ECF No. 30, at ¶ 30.

[7] Plaintiffs assert that the 2009 Uniform Residential Loan Application was simply a form onto which information requested by FNBD could be placed; as opposed to a loan application separate from the February 2008 application as characterized by FNBD. ECF Nos. 123, at p. 21.

a decision to deny credit; rather . . . [FNBD] argues that the decision was not adverse action which triggered the notice requirements of [the] ECOA and Regulation B." *Id.*

Viewing the foregoing evidence in the light most favorable to Plaintiffs, I find that Plaintiffs have demonstrated through their response to FNBD's Motion for Summary Judgment that there are genuine issues of material fact regarding the foregoing issues in relation to Plaintiffs' ECOA claim.

   C. <u>Whether Summary Judgment is Proper as to Plaintiffs' Remaining Claims</u>

Plaintiffs' Second Amended Complaint also avers 10 contractual and non-contractual claims, which stem from FNBD's alleged failure to honor its lending commitments to Plaintiffs. FNBD asserts that Plaintiffs' remaining claims fail for two independent reasons. First, no legally operative document obligating FNBD to make a Permanent Loan to Plaintiffs under the Colorado Credit Agreements Act exists. Second, even if the Permanent Loan CAM does constitute a binding agreement under the Colorado Credit Agreements Act, the CAM's re-verification condition demonstrates that FNBD is entitled to summary judgment on Plaintiffs' claims. As noted below, I find that Plaintiffs have demonstrated genuine issues of material fact regarding these claims.

    1. <u>Whether Credit Approval Memorandums are Legally Binding</u>

In February of 2008, Plaintiffs allege that they submitted a single application to FNBD for two related loans; namely, a short-term Construction Loan to finance a construction project and a Permanent Loan to repay the Construction Loan. ECF No. 30, at ¶ 13. The financing was sought by Plaintiffs for the purpose of building a new primary residence on a 118.9 acre lot. ECF Nos. 126-5, 126-6. FNBD maintains that Plaintiffs only applied for a Construction Loan as indicated on the application form. ECF

No. 103, at p. 17.  FNBD reasons that the form included separate check boxes for construction loans and construction-permanent loans, but Plaintiffs only selected the construction loan box.  *Id.*

On April 8, 2008, FNBD generated two separate documents each bearing the title Credit Approval Memorandum ("CAM"), the legal effect of which the parties dispute.  ECF No. 30, at ¶ 21.  The CAMs outlined various considerations that were taken into account in approving the Construction and Permanent Loans.  ECF Nos. 126-5, 126-6, & 30, at ¶ 21.  The CAMs also identified the names of the parties, the purpose of each loan, and the essential terms and provisions of financing.  *Id.*  Further, the CAMs were initialed by FNBD's loan committee and two additional FNBD members to signify approval.  *Id.*

FNBD argues that CAMs are not binding and do not denote formal approval because they were used to document internal processes and were not furnished to its borrowers.  ECF No. 103, at ¶¶ 19 - 22.  FNBD maintains that its formal loan approval process is signified through written loan agreements, promissory notes, and other related documents executed by the borrower and the FNBD loan officer at closing.  ECF No. 103, at ¶ 19.  To this point, Plaintiffs assert that these and other related documents are legally binding on FNBD because they were intended to formally approve the loans.  Further, Plaintiffs point out that the Colorado Credit Agreements Act, C.R.S. § 38-10-124, "defines 'credit agreement' broadly to include any sort of 'offer' or 'undertaking' to lend money, and any sort of 'representation' that a bank may make in 'negotiating' a loan."  ECF No. 123, at p. 15.

### 2. Re-verification Condition

Shortly after receiving the Construction Loan, Plaintiffs built the farmhouse where they reside today. ECF No. 30, at ¶ 24. Prior to the maturity of the Construction Loan, FNBD informed Plaintiffs that the Permanent Loan was no longer approved. ECF Nos. 30, at ¶ 25; 103, at ¶ 53. The disapproval was based on information disclosed by Plaintiffs in the September 2009 Uniform Residential Loan Application requested by FNBD. ECF Nos. 103, at ¶ 53; 104-12. FNBD originally conditioned the Permanent Loan on re-verification of Plaintiffs' credit, as indicated by a handwritten note on the CAM, and determined that the considerations taken into account when issuing the CAM in 2008 were no longer satisfied. ECF Nos. 103, at ¶ 53; 126-6.

FNBD argues that even if the Permanent Loan CAM constitutes a binding agreement under the Colorado Credit Agreements Act, the CAM's re-verification condition demonstrates that FNBD is entitled to summary judgment on Plaintiffs' claims. ECF No. 103, at p. 23. FNBD reasons that since Plaintiffs' financial condition deteriorated, Plaintiffs no longer met the requirements of the conditioned loan. *Id.* Plaintiffs, believing that they had been approved for both the Construction Loan and the Permanent Loan, assert that the re-verification condition was not disclosed. ECF No. 123, at p. 21. Further, Plaintiffs contend that rescinding the Permanent Loan based on the re-verification condition warranted an adverse action notice under the ECOA, which Plaintiffs did not receive. ECF No. 123, at p. 23.

Viewing the foregoing evidence in the light most favorable to Plaintiffs, I find that Plaintiffs have demonstrated through their response to FNBD's Motion for Summary

Judgment that there are genuine issues of material fact regarding the foregoing issues in relation to Plaintiffs' remaining claims.

### III.     CONCLUSION

Based on the foregoing, it is

ORDERED that FNBD's Motion for Summary Judgment (ECF No. 103) is **DENIED**.  It is

FURTHER ORDERED that the parties shall contact Magistrate Judge Shaffer's chambers to reset the Final Pretrial Conference within 72 hours of receiving this ruling, as ordered by Magistrate Judge Shaffer in ECF No. 121.

Dated:  October 14, 2014.

BY THE COURT:

s/ Wiley Y. Daniel
WILEY Y. DANIEL,
SENIOR UNITED STATES DISTRICT JUDGE